UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARA DARAKJIAN, et al.

        Plaintiffs,

v.

CITY OF BIRMINGHAM, et al.

        Defendants.
_____/

Case No. 19-10277
District Court Judge Victoria A. Roberts
Magistrate Judge Elizabeth A. Stafford

## ORDER GRANTING WOODWARD BATES' MOTION TO DISMISS AND THE CITY OF BIRMINGHAM'S MOTION FOR JUDGMENT ON THE PLEADINGS

### I. INTRODUCTION

Defendants, Woodward Bates Partners, LLC, and the City of Birmingham, et al., filed Motions to Dismiss and for Judgment on the Pleadings, respectively. Because the Motions assert the same arguments and require a similar standard of review, the Court addresses them together.

The motions challenge Plaintiffs' standing. Defendants say: (1) Ara Darakjian ("Darakjian") lacks standing as an individual; and (2) TIR Equities LLC ("TIR") lacks standing because it is a "disappointed bidder."

Because Darakjian does not have standing as an individual to bring a claim, Defendants' Motions are **GRANTED** on his claims. Because TIR lacks standing because he is a disappointed bidder and no exceptions apply, Defendants' Motions are **GRANTED** on TIR's claims.

### II. FACTUAL BACKGROUND

Darakjian founded TIR in 2014 and is its sole owner.

1

In 2017, the City of Birmingham ("the City") initiated a public bidder selection process to redevelop a parcel of City property ("the Project"). Around March 2017, the City issued a Request for Qualifications ("RFQ"), inviting respondents to submit their qualifications and experience for an invitation to submit a bid, also known as a "proposal," for the Project. From this process, the City invited four entities to bid; TIR and Defendant Woodward Bates Partners, LLC were two of the four.

Next, the City issued a Request for Proposals ("RFP") to the four entities. The RFP outlined development guidelines and design issues for the Project and included a "conceptual illustration" of a "sample plan" for redevelopment of the Project site. The deadline to submit bids was January 3, 2018. Darakjian says the sample plan was created by Woodward Bates.

In January of 2018, TIR and Woodward Bates submitted bids to the City's Ad Hoc Parking Development Committee ("the Committee"). Darakjian and TIR allege that Woodward Bates' proposal included the same images included in the sample plan from the RFP. The City requested additional information from both bidders and invited both to a formal interview. The Committee interviewed both TIR and Woodward Bates on March 9, 2018.

The Committee met to discuss the two bids. The Committee analyzed whether TIR's bid was in compliance with the RFP and compared the bid to the sample design. This same day, Darakjian served a letter to the Committee addressing concerns about TIR's bid. The Committee did not respond.

The Committee recommended to the Birmingham City Commission that the City move forward with Woodward Bates. The Commission approved the recommendation on June 25, 2018.

On July 3, 2018, Darakjian sent a letter to the Commission saying that TIR would make changes to its bid, including that TIR would build a parking structure at no cost to the City. He also read this letter into the record during the Commission meeting on July 9, 2018.

On July 17, 2018, Darakjian met with Defendant Joseph Valentine and others to discuss TIR's bid. On July 18, 2018, Defendant Valentine sent a letter to Darakjian advising that the City would move forward with Woodward Bates and was unable to consider any new proposals by Darakjian's team.

### III. LEGAL STANDARD
#### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Rule 8(a)(2), the statement of the claim must be plausible. Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id*. This requires more than "bare assertions of legal conclusions";

3

a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations. *Id.* The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Judgment on the Pleadings

The Court applies essentially the same standard of review for judgment on the pleadings as it does for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Fritz v. Charter Twp. of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,* 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

To withstand a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting

4

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In deciding this motion, the Court does not consider materials raised outside of the pleadings.

IV. **DISCUSSION**

   A. **Darakjian's Individual Standing**

Defendants say Darakjian lacks standing as an individual because TIR submitted the bid – not him. They say his claim should be dismissed because TIR asserted its own claim and Darakijan does not allege a derivative claim.

Darakjian says he has standing because: (1) he was a "prospective bidder" for the Project; (2) he is a citizen and taxpayer of the City of Birmingham; (3) he suffered an injury distinct and separate from TIR; and (4) he satisfies the Supreme Court's general test for Article III standing by alleging economic damages.

   i. **Standing as a Prospective Bidder**

Defendants say: (1) only TIR submitted a bid for the Project; and (2) Darakjian's alleged attempt to submit a revised bid through a letter to the City in July of 2018 does not qualify him as a prospective bidder.

In support of standing as a prospective bidder, Darakjian relies on *Club Italia Soccer & Sports Organization, Inc. v. Charter Tp. Of Shelby, Mich.,* 470 F.3d 286, 294 (6th Cir. 2006), *overruled on other grounds as recognized by Davis v. Prison Health Services,* 679 F.3d 433 (6th Cir. 2012).

*Club Italia* is distinguishable. There, the Sixth Circuit found the plaintiff had a sufficient economic interest at stake to support standing after the defendant refused to

allow him to bid on the contract in an open bidding process. *Id.* at 294. Here, Darakijan was not precluded from submitting a bid during the open bidding process. Darakjian claims he attempted to submit a revised proposal in July of 2018 – about seven months after the January 3rd submission deadline.

Darakjian's correspondence to the City regarding this revised bid was on behalf of TIR. The letter sent by Darakjian on July 3, 2018 begins: "I represent the applicant TIR Equities, which submitted a response to the RFP for the Bates Street Extension." Defendant City of Birmingham's Motion for Judgment on the Pleadings. ECF No. 15-5, Page ID.253. Any assertion that this letter shows Darakjian's intent to submit a new bid himself is disingenuous.

Importantly, throughout his complaint and in his response brief, Darakjian repeatedly refers to TIR's bid and highlights his advocacy efforts on behalf of TIR. The following excerpts are the relevant portions of Darakjian's complaint:

> 52. Darakjian served a letter upon the Committee addressing its concerns regarding TIR's proposal.
>
> . . .
>
> 57. Darakjian sent a letter to the commission . . . stating, among other things, that TIR would build the parking structure *at no cost at all to the City* - with TIR paying for the construction and retaining the income derived therefrom only until TIR's investment therein was recouped, at which point TIR would sell the parking structure to the City for $1. (emphasis in original).
>
> . . .
>
> 62. Valentine sent a letter to Darakjian summarily dismissing TIR's proposal.

Plaintiff's Amended Complaint. ECF No. 9, Page ID. 44-45, 46 (emphasis in original).

6

As the City points out, nowhere in his complaint does Darakjian allege anything except that he is the owner of TIR, and that he was acting on behalf of TIR when he sent letters concerning its bid. Although Darakjian interchangeably references the bid as "Plaintiffs' proposal" and "TIR's proposal," it is undisputed that only TIR responded to the City's Request for Qualifications and, that TIR - not Darakjian - submitted a bid for the Project by the January 3, 2018 deadline. Only TIR was a prospective bidder by the time bids closed on January 3, 2018.

Darakjian does not have standing as a prospective bidder.

### ii.     General Article III Standing

Defendants say Darakjian cannot establish Article III standing because he was neither a prospective nor actual bidder and has no injury fairly traceable to the alleged unlawful conduct.

Darakjian says his personal expenditures towards the bid represent an injury separate and distinct from any injuries to TIR and establish Article III standing. He relies on *Gaff v. Fed. Deposit Ins. Corp.,* 814 F.2d 311, 315 (6th Cir. 1987), which provides standing for a shareholder who suffers an injury separate and distinct from its corporation.

To establish constitutional Article III standing, Darakjian must show he suffered a cognizable injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, (1992). Standing requires, amongst other things, that a plaintiff "assert his own legal rights and interests, without resting the claim on the rights or interest of third parties." *Wuliger v. Manufacturers Life. Ins. Co.,* 567 F.3d 787, 793 (6th Cir. 2009). Darakjian must be directly benefitted or

injured by the outcome of the litigation. *Heine v. Streamline Foods, Inc.,* 805 F.Supp.2d 383, 388 (N.D. Ohio, July 29, 2011).

This Court previously held "although wage, investment, and other economic losses may flow to an individual from discriminatory harm suffered by a corporation, those injuries are not 'separate and distinct' from those suffered by that corporation." *Club Xtreme, Inc. v. City of Wayne,* 2010 WL 1626415 at *5 (E.D. Mich. Apr. 21, 2010). Under Michigan law, rules with respect to corporations apply equally to limited liability corporations. *Hills and Dales General Hosp. v. Pantig,* 295 Mich.App. 14, 21 (2011). As such, a limited liability company is its own "person," separate and distinct from its owners. *Id.* Here, Darakjian is separate and distinct from his LLC, TIR.

Darakjian admits that his personal expenditures were made towards the TIR bid. Plaintiffs' Response. ECF No. 19, Page ID.306. The Court has already held that Darakjian was not a prospective bidder. Any efforts made by Darakjian were on behalf of TIR. As such, any alleged injury suffered by Darakjian is not separate and distinct from TIR's alleged injuries.

Because Darakjian suffered no cognizable injury in fact, he cannot establish general Article III standing.

### iii.   Municipal Taxpayer Standing

Defendants argue Darakjian cannot establish municipal taxpayer standing because: (1) none of his claims is based on that theory; and (2) the municipal taxpayer case law does not apply to this action. Defendants are correct.

Because Darakjian only challenges the City's process which led to the expenditure, and does not challenge the expenditure of municipal funds, he fails to establish municipal taxpayer standing.

The Supreme Court articulated a general prohibition against federal and state taxpayer standing in *Frothingham v. Mellon,* 262 U.S. 447 (1923). However, the Court approved municipal taxpayer standing to enjoin the illegal use of municipal funds because of the close relationship between the City and its taxpaying resident. *Frothingham*, 262 U.S. at 487. *Frothingham* held a municipal taxpayer can seek an injunction to stop the illegal use of municipal funds because that interest is "direct and immediate," *Frothingham,* 262 U.S. at 486, as opposed to a state or federal taxpayer, whose interest in the funds is shared with millions. *Id.* at 487.

The Sixth Circuit abides by *Frothingham,* holding that a municipal taxpayer has standing if his action challenges the expenditure of municipal funds. *American Atheists, Inc. v. City of Detroit Downtown Development Authority,* 567 F.3d 278, 285 (6th Cir. 2009). It later held that a municipal taxpayer may fulfill the injury requirement by *pleading* an alleged misuse of municipal funds. *Smith v. Jefferson County Bd. of School Com'rs,* 641 F.3d 197, 210 (6th Cir. 2011).

Municipal taxpayer standing was further clarified in *Feldman v. Bowser,* 315 F.Supp.3d 299 (D.D.C. May 30, 2018). Relying in part on *Smith,* the D.C. Circuit held it is only available to a taxpayer who alleges expenditures that are unlawful; standing is not available to someone who challenges the overall method or process by which city governments makes expenditures that are otherwise lawful. *Id.* at 310.

Darakjian does not plead an alleged "illegal use" of municipal funds. The amended complaint alleges a violation of due process and asks the Court to order Defendants to "conduct their bidder selection process in a manner that is consistent with Plaintiffs constitutional right to due process, that is fair to Plaintiffs, and that is free from favoritism and conflicts of interest." Plaintiffs' Amended Complaint. ECF No. 9, Page ID.50. This is a challenge to the City's bidder selection process which led to the use of funds for a lawful purpose: the development of the City's property.

Darakjian lacks standing as a municipal taxpayer.

### B. TIR Does Not Have Standing to Bring a Claim

Defendants say TIR lacks standing because it is a disappointed bidder - a bidder who sues after the government rejects his bid. *See EBI Detroit, Inc. v. City of Detroit,* 279 Fed. Appx. 340, 348 n.4 (6th Cir. 2008). "[D]isappointed bidders have no standing to bring claims based on a violation of bidding procedures." *Id.* at 348.

TIR does not dispute that in general, a disappointed bidder does not have standing. But, it claims it falls under two exceptions to the general rule. The first exception comes into play when a city has limited discretion as to whom it will award bids. This was announced in *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 34 (6th Cir. 1992); the Court held a disappointed bidder can establish standing by showing that local rules limit the discretion of officials.

The second exception applies where there is an expressed legislative intent to confer standing upon a disappointed bidder. This was announced in *Club Italia Soccer & Sports Organization, Inc. v. Charter Tp. of Shelby, Mich.,* 470 F.3d 286, 293 (6th Cir.

2006), *overruled on other grounds as recognized by Davis v. Prison Health Services,* 679 F.3d 433 (6th Cir. 2012).

### 1. The City Had Unlimited Discretion to Award Bids

Defendants say the first exception does not apply because the City had unlimited discretion to award the bid to Woodward Bates. In support of its contention that City discretion was limited, TIR directs the Court to Section 2-280 of the City's Code:

> (a) Except as provided in subsection (c) of this section, all supplies and contractual services, when the estimated cost thereof shall equal or exceed $6,000.00, shall be purchased by formal written contract from the lowest responsible and responsive bidder after due notice inviting competitive sealed bids. All such contracts shall be awarded by the city commission.

Plaintiffs Response Motion. ECF No. 19-14, Page ID.441.

Defendants say Section 2-280 is inapplicable because the Project is not considered a "contractual service." And, despite the City Code language that bids be awarded to the lowest responsible and responsive bidders, Defendants direct the Court to the RFP, which says: "[t]he City of Birmingham reserves the right, at its sole discretion, to reject any or all submittals when, in its opinion, it is determined to be in the public interest to do so." Defendant Woodward Bates Motion to Dismiss, ECF No. 14-2, Page ID.163.

Whether the Project is considered a "contractual service" under Section 2-280 is irrelevant. As the City points out, Section 2-280(a)(1)(e) addresses invitations to bid and says: "An invitation for bids may be cancelled or any or all bids or proposals may be

11

rejected in whole or in part as specified in the invitation for bids when it is determined by the city commission to be in the best interests of the city."

The RFP is consistent with Section 2-280(a)(1)(e). The City retains complete discretion to reject bids even from the lowest responsible and responsive bidder for contractual services.

### 2. Darakjian Cannot Establish Expressed Legislative Intent to Confer Standing

The expressed legislative intent exception does not apply to TIR. The Sixth Circuit held "where the [Administrative Procedure Act] or similar legislation that expresses a congressional intent to create standing does not apply, a disappointed bidder does not have standing." *Club Italia*, 470 F.3d 286, 293 (6th Cir. 2006). *Club Italia* relied on *Cincinnati Electronics Corp. v. Kleppe,* 509 F.2d 1080 (6th Cir. 1975). There, the bidding legislation at issue stated a "fair proportion of purchases and contracts" would be awarded to "small business concerns." 509 F.2d at 1086. The Sixth Circuit found this legislation represented Congress' recognition of the legal right of a bidder for government contracts to benefit from such language and held that it conferred standing to sue. The Court held the language created a "zone of interest[] sought to be regulated or protected." *Id.*

TIR says the City Code created a similar "zone of interest" – the lowest responsible and responsive bidder – deserving of protection and the ability to sue. But, Section 2-280 does not grant a preference to any bidder – unlike the legislation in *Cincinnati Electronics,* which had an interest in protecting small business concerns. The City's Code, and the RFP, clearly state the City can reject proposals at its sole discretion when it is in the best

interest of the City to do so – even if the bid belongs to the lowest responsible and responsive bidder.

## V. CONCLUSION

Plaintiffs fail to state a claim upon which relief can be granted.

Defendants' Motions are **GRANTED**. Plaintiffs' claims are dismissed with prejudice and judgment will enter in favor of Defendants City of Birmingham, Mark Nickita, and Joseph Valentine.

**IT IS ORDERED.**

Dated: July 29, 2019                    s/ Victoria A. Roberts
                                         Victoria A. Roberts
                                         United States District Judge